IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ERIN E. BROCATO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:13-CV-3 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Erin E. Brocato ("Brocato") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Brocato alleges that the ALJ failed to account for a number of severe impairments, and that the evidence she submitted to the Appeals Council was not properly considered.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that evidence submitted after the ALJ's decision is new, material, and relevant, and should be considered by the ALJ. Accordingly, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 15), **GRANTING IN PART** Brocato's Motion for

Summary Judgment (Dkt. No. 13), and remanding this case for further administrative consideration consistent with this Report and Recommendation.

## **STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Brocato failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Brocato bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991).

## STATEMENT OF FACTS

### Social and Vocational History

Brocato was born on August 25, 1985 (Administrative Record, hereinafter "R." at 33), and was considered a younger person on her alleged onset date. R. 64; 20 C.F.R.

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of her or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

§§ 404.1563(c), 416.963(c). Brocato's date last insured is June 30, 2010 (R. 188); thus, she must show that her disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Brocato has an eighth grade education. R. 34. Brocato previously worked as a retail cashier (light, unskilled work), dishwasher (medium, unskilled work), and short order cook (light, semi-skilled work). R. 58, 224, 248. Brocato reported that during the relevant period, she bathed and did laundry once or twice a week, washed dishes, made meals, went grocery shopping with the assistance of her husband, and visited her children once a week. R. 41, 264–69.

## Claim History

Brocato protectively filed for SSI and DIB on July 6, 2011 (R. 174–87), claiming that her disability began on February 1, 2010. R. 174, 178. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 102–08, 114–28. On July 25, 2012, ALJ Marc Mates held a hearing to consider Brocato's disability claim. R. 30. Brocato was represented by an attorney at the hearing, which included testimony from Brocato, her husband, John Brocato, and vocational expert Andrew Beale. R. 58–60.

On August 10, 2012, the ALJ denied Brocato's claims. R. 14. The ALJ found that Brocato suffered from the severe impairments of abdominal disorder, including hernias and gastroesophageal reflux disease ("GERD"); obesity; and depression. R. 19. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 20. The ALJ further found that Brocato retained the RFC to perform light work, except she could not climb ladders, ropes, or scaffolds. R. 22. She must also avoid concentrated exposure to hazards, and have only minimal interaction with the public. R. 22. The ALJ

4

determined that Brocato could not return to her past relevant work as a cashier, dishwasher, or short order cook (R. 26), but that Brocato could work at jobs that exist in significant numbers in the national economy: namely cleaner, laundry separator, and stock checker. R. 27. Thus, the ALJ concluded that she was not disabled. R. 27. On December 6, 2012, the Appeals Council denied Brocato's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

Brocato argues that the ALJ erred by failing to properly determine her severe impairments and failing to identify all of her severe impairments in his hypothetical question to the vocational expert. Brocato also claims that additional evidence submitted to the Appeals Council is new, material, and relevant, and should be considered by the ALJ. Having reviewed the record as a whole, I find that the ALJ's decision is supported by substantial evidence in the record. However, I further find that the additional evidence submitted to the Appeals Council is new, material, and relevant, and thus it is appropriate to remand this case to the Commissioner to consider the evidence under sentence four of 42 U.S.C. § 405(g).

### Severe Impairments

Brocato argues that the ALJ should have found her gallstones, necrosis of the pancreas, and ascites to be severe impairments. Brocato bears the burden of proving that these impairments were severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). An impairment is non-severe when it causes no significant limitations in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are defined in the regulations as the abilities or aptitudes necessary to do most jobs. 20 C.F.R. §§ 404.1521(b), 416.921(b). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with

5

the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Additionally, an impairment must last, or be expected to last, for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

The ALJ acknowledged that Brocato had severe impairments of abdominal disorder, including hernias and gastroesophageal reflux disease, obesity, and depression. R. 19. The ALJ noted that Brocato also suffered from hypertension, but that it was controlled with medication. R. 20. Substantial evidence supports the ALJ's decision that Brocato did not suffer from any additional severe impairments.

On March 31, 2010, Brocato was hospitalized for pregnancy-induced hypertension, acute pancreatitis, anemia, sepsis, acute respiratory distress syndrome, and hypercalcemia. R. 331. An ultrasound of Brocato's gallbladder showed multiple gallstones, but a CT scan of her abdomen the next day showed no gallstones and mild to moderate ascites (accumulation of fluid in the abdominal cavity). R. 392–93. Brocato's baby was delivered by emergency cesarean section, and Brocato was transferred to the intensive care unit and placed in a medically-induced coma while she was treated for her multiple conditions. R. 331. On April 21, 2010, Brocato was discharged from the hospital with medications and instructions to maintain pelvic rest, follow up with her primary obstetrician, maintain abstinence from alcohol, and follow healthy eating choices. R. 332.

The records do not demonstrate that Brocato's gallbladder, pancreatic necrosis, or ascites presented any significant issues for Brocato after her hospitalization in 2010. CT scans of Brocato's gallbladder performed on October 6, 2011 and November 11, 2011 showed a

6

"contracted gallbladder," but made no note of gallstones, and found an "unremarkable pancreas." R. 459, 643. On February 12, 2012, Brocato visited David Rylak, M.D., complaining of sharp pain in her right upper quadrant. R. 525. Brocato reported that she had no history of gallstones, and had no other associated symptoms. R. 525. Dr. Rylak found Brocato's examination to be benign, her laboratory work showed possible gallbladder dysfunction, and he released her home in stable condition. R. 526. Brocato again complained of abdominal pain on February 28, 2012. R. 606. A CT scan of Brocato's abdomen performed on February 29, 2012 showed a small subcutaneous fluid collection, most likely representing a seroma, and a small hypodensity of the pancreas. R. 507–08. Brocato was advised to follow up with a physician. R. 508. On March 7, 2012, Nurse Practitioner M. Ashley Cook noted that Brocato's right upper quadrant pain had resolved, and stated, "[s]uspect this is possibly related to some gastroesophageal reflux disease as opposed to her gallbladder." R. 602. The record also contains a discharge note from Augusta Medical Center Emergency Department dated July 17, 2012, stating that Brocato's evaluation indicates that gallbladder disease is one of the possible causes for her symptoms. R. 657. The records do not indicate that Waller received any additional treatment for complaints related to her gallbladder, pancreas, or ascites.

The records set forth above do not demonstrate that Brocato suffered any impairments of her gallbladder, pancreas, or ascites of sufficient duration to be considered "severe." They further do not indicate that these alleged impairments limited Brocato's ability to perform basic work activities. Thus, there is more than adequate support for the ALJ's conclusion that these issues did not result in significant and continuous limitations on Brocato's ability to work.

## **Vocational Expert**

Brocato also claims that the extent of her educational limitations was not made sufficiently clear to the vocational expert, and thus, the vocational expert's assessment of the jobs she could perform was inadequate. A review of the hearing transcript demonstrates that Brocato's allegation is without merit.

At the administrative hearing, the ALJ presented a hypothetical to the vocational expert of an individual with Brocato's age, education, and work experience, who is capable of light work, with no ladder, rope, or scaffold climbing and no concentrated exposure to hazards. The individual was limited to simple, repetitive tasks, was able to sustain concentration on such tasks for two-hour segments, was able to interact with coworkers and supervisors as needed, but generally fared better with minimal social interaction and no more than occasional public contact, and could respond appropriately to change in a routine work setting. R. 58. Based on that hypothetical, the vocational expert found that there existed jobs in the national and regional economy for such an individual. R. 59.

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). Here, Brocato claims that the record is not clear whether the vocational expert was aware of her educational limitations, noting that her school records show that she quit school in the eighth grade, was in special education classes, and her test scores were "well below average" in math and reading in the eighth grade. R. 217–19.

The vocational expert was present throughout the administrative hearing in this matter, and heard Brocato's testimony. Specifically, Brocato testified that she had an eighth grade

education and was in special education classes. R. 34, 48. The vocational expert testified that he had an opportunity to review Brocato's file, which included Brocato's educational records and below average test scores, as well as the report of psychologist Gerald Showalter, Psy.D., indicating that Brocato had an eighth grade education and attended special education classes. R. 57, 196–221, 489. Thus, the vocational expert was sufficiently aware of Brocato's educational limitations when he responded to the ALJ's hypothetical question, and it was reasonable for the ALJ to rely upon the vocational expert's testimony.

## Additional Evidence

After the ALJ's denial decision, Brocato submitted to the Appeals Council a neuropsychological evaluation report and mental impairments questionnaire completed by Thomas V. Ryan, Ph.D. on September 8, 2012 and October 25, 2012. R. 659–72. The Appeals Council considered the additional evidence and made it part of the record, but "found that this information does not provide a basis for changing the Administrative Law Judge's decision." R. 2.

Brocato first argues that the Appeals Council failed to perform its legal duty to substantively review Dr. Ryan's reports on the record. When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id. The Appeals Council is not, however, required to provide express, specific findings on the record regarding the additional evidence submitted by Brocato. As the Fourth Circuit clarified in Meyer v. Astrue, 662 F.3d 700, 705 (4th

9

Cir. 2011), "nothing in the Social Security Act or the regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." In this case, the Appeals Council's consideration of the additional evidence submitted by Brocato and denial of review met its obligations under the agency's regulations.

When the Appeals Council denied Brocato's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record, including the new evidence, to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand. Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings

10

v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 F. App'x 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001)(unpublished opinion); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013)). After a careful review of Dr. Ryan's reports and the record as a whole, I find that Dr. Ryan's reports constitute new, relevant, and material evidence, and thus it is appropriate to remand this case to the Commissioner to consider the evidence under sentence four of 42 U.S.C. § 405(g).

During the relevant period, Brocato sought treatment for depression and anxiety. R. 434, 436–37, 447–48. On September 27, 2011, Brocato underwent an initial evaluation at Augusta Health Behavioral Health Services. R. 499. Social worker Pamela Davies reported a normal mental status exam, with the exception of Brocato having "little" insight, and "average" estimated intelligence. R. 500. Her mood was tired and worried. R. 500. Ms. Davies diagnosed Brocato with major depressive disorder, recurrent, mild, and rated her GAF at 65.[2] R. 500.

On February 6 and 7, 2012, licensed clinical psychologist, Gerald R. Showalter, Psy.D., performed a psychological evaluation of Brocato on the referral of the Department of Social Services, related to the removal of Brocato's children from her home. R. 487–91. Dr. Showalter found that Brocato had an estimated below average level of intellectual capability, with well below average word knowledge, contrasted by average nonverbal problem solving abilities. Her personality assessment revealed an open acknowledgement of severe depression and anxiety-related distress. R. 490. Dr. Showalter diagnosed major depressive disorder, recurrent, moderate with avoidant and paranoid features, and recommended that Brocato participate in psychiatric, psychotherapeutic, and parenting group interventions. R. 490.

---

[2] The Global Assessment of Functioning is a numeric scale ranging from 0 to 100 used by mental health professionals to rate social, occupational and psychological functioning, on a hypothetical continuum of mental health illness." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. Am. Psychiatric Ass'n 1994)("DSM IV"). A score of 61-70 suggests mild symptoms or some difficulty in social, occupational, or school functioning. Id.

Two state agency psychologists reviewed Brocato's records, and found that she had no restriction of activities of daily living; mild difficulties maintaining social functioning, concentration, persistence, or pace; and one or two episodes of decompensation, each of extended duration. R. 74, 84. Additionally, social worker Davies completed an undated Mental Status Evaluation Form in which she reported that Brocato's diagnoses were major depressive disorder, mild, and "lots of social stressors." R. 471. Ms. Davies noted that she does "not find her psychiatrically disabled." R. 471.

Based on the evidence set forth above, the ALJ found that Brocato had a severe impairment of depression, but found that she had no restriction in activities of daily living, mild difficulties with social functioning and concentration, persistence, and pace, and no episodes of decompensation. R. 20–21. The ALJ gave Dr. Showalter's assessment weight, but found that the record as a whole supported the finding that Brocato can handle simple, repetitive tasks, involving limited social interaction and no more than occasional public contact. R. 25.

On August 23, 2012, approximately two weeks after the ALJ's decision, Dr. Ryan performed a comprehensive neuropsychological evaluation of Brocato. R. 659. Dr. Ryan reviewed Brocato's records and conducted an examination of Brocato, which involved performing several validity and neurobehavioral measure tests. R. 661–66. Dr. Ryan found that Brocato's full scale IQ was 81, with a verbal comprehension index of 74, perceptual reasoning index of 90, and working memory index of 80. R. 662–63. Brocato's reading comprehension score was in the eighth percentile. R. 663. Dr. Ryan noted an overall pattern of mild cognitive dysfunction, involving functions underlying both the left and right cerebral hemispheres. R. 664. Dr. Ryan recommended that Brocato undergo cognitive remediation and learn cognitive compensatory strategies. Dr. Ryan also recommended that Brocato re-apply for social security

disability benefits, because her mild to moderate neuropsychological dysfunction was not previously presented to the ALJ. R. 665. Dr. Ryan found that if Brocato was to seek employment, it must be on a "very part-time basis considering her neuropsychological deficiencies." R. 665.

In his report, Dr. Ryan noted that "numerous areas of concern emerged" from his review of the psychological evaluation of Brocato performed by Dr. Showalter. R. 660. Dr. Ryan believed that the psychological testing completed by Dr. Showalter was not valid, given Brocato's borderline reading comprehension abilities and deficit sustained concentration abilities, as well as "other numerous neurobehavioral deficits." R. 664.

On October 25, 2012, after two counseling sessions with Brocato, Dr. Ryan completed a Mental Impairments Questionnaire. R. 667–72. Dr. Ryan diagnosed Brocato with dementia due to multiple etiologies, learning disorder, communication disorder, cognitive disorder, chronic unstable hypertension, and problems with her primary support group. R. 667. He diagnosed Brocato with a current GAF of 50 and highest GAF in the past year of 55.[3] Dr. Ryan described his findings as "mild to moderate generalized brain dysfunction involving both the left and right cerebral hemispheres, attentional dysfunction, linguistic impairments, and severely deficient verbal and spatial short-term memory." R. 667. He found that Brocato had moderate restriction of activities of daily living; marked difficulties in maintain social functioning; extreme deficiencies of concentration, persistence or pace; and four or more episodes of decompensation. R. 671. Dr. Ryan also found that Brocato would miss four or more days of work per month due to her impairments. R. 672.

---

[3] A GAF in the 41-50 range indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning. A GAF in the 51-60 range indicates some moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficult in social, occupation, or school functioning. DSM IV.

The Commissioner concedes that Dr. Ryan's reports constitute "new" evidence. Comm'r Br. at 16. They were created after the ALJ's decision, and are not duplicative or cumulative of other evidence in the record. Dr. Ryan is the only neuropsychologist to examine Brocato, perform neuropsychological testing, and determine her IQ score. Dr. Ryan's reports also relate back to the period at issue because they deal with Brocato's overall cognitive ability and IQ. See Luckey v. U.S. Dep't of Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989) (In the absence of evidence that a claimant's IQ score has changed, it may be assumed that his scores have remained relatively constant throughout his life.).

The Commissioner argues that Dr. Ryan's reports are not "material" because they are inconsistent with the findings and opinions of the other physicians in the record. However, it is this inconsistency that requires the court to remand the case to the ALJ to consider and weigh Dr. Ryan's reports. "Assessing the probative value of competing evidence is quintessentially the role of the fact finder." Meyer v. Astrue, 662 F. 3d 700, 707 (4th Cir. 2011). Dr. Ryan's opinions are significantly more restrictive than the other medical opinions in the record. Dr. Ryan diagnosed Brocato with multiple cognitive impairments, and found that she suffered marked difficulties with social functioning and severe deficiencies of concentration, persistence, and pace. R. 671. This is exactly the type of contradictory new evidence that must be remanded to the Commissioner because it calls into doubt the ALJ's decision grounded in the prior medical reports. See Salmons v. Astrue, 2012 WL 1884485 (W.D.N.C. May 23, 2012) (Remand to Commissioner under sentence four because it is role of ALJ, not court, to weigh inconsistent evidence regarding plaintiff's intellectual functioning.).

The Commissioner also argues that Dr. Ryan's opinions are not "material" because they are not supported by Brocato's treatment records. However, the law is clear that "[t]he duty to

resolve conflicts in the evidence rests with the ALJ, not with the reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)). In this case, no fact finder has made any findings as to Dr. Ryan's reports. As noted above, the ALJ's decision denying Brocato's claims was supported by substantial evidence given the information in the record before the ALJ at the time of his decision. However, the ALJ did not have the benefit of Dr. Ryan's evaluations when determining Brocato's RFC. Dr. Ryan's reports are new, they relate back to the relevant time period, and they are considerably more restrictive than the other opinion evidence in the record; thus, they should be considered by the Commissioner.

By making this finding, the court does not suggest that these records conclusively establish disability. Indeed, this evidence ultimately may not have any bearing on the ALJ's RFC assessment or the Commissioner's disability determination. However, the court is charged with reviewing the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96. Here, there is a reasonable probability that the ALJ may reach a different conclusion upon consideration of the record as a whole, including Dr. Ryan's reports. Accordingly, I recommend that the defendant's motion for summary judgment be **DENIED**, Brocato's motion for summary judgment be **GRANTED IN PART**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) with instructions that the ALJ consider Dr. Ryan's reports dated September 8, 2012 and October 25, 2012.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

                Enter: February 18, 2014

                *Robert S. Ballou*

                Robert S. Ballou
                United States Magistrate Judge